IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILILNOIS
EASTERN DIVISION

| | |
|---|---|
| TORY BURCH LLC and RIVER LIGHT V, L.P., | ) ) ) |
| Plaintiffs, | ) Case No. 12 C 7163 ) |
| v. | ) Judge John Z. Lee ) |
| DOES 1-100 d/b/a the aliases identified on Schedule "A", | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Tory Burch LLC and River Light V, L.P. (collectively, "Plaintiffs" or "Tory Burch") have sued Defendants DOES 1-100 ("Defendants") for federal trademark infringement, counterfeiting and false designation of origin in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), cyberpiracy in violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), and deceptive practices in violation of the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 Ill. Comp. Stat. § 510, *et seq*. Plaintiffs, a United States-based fashion brand that produces Tory Burch branded footwear, handbags, accessories, clothing, and related products and services, allege that Defendants, individuals and business entities who reside in the People's Republic of China or other foreign jurisdictions, operate commercial websites targeting Illinois residents with offers to sell counterfeit Tory Burch products. Tory Burch contends that Defendants use a variety of domain names set up by registrants (the "Accused Domain Names") and create websites that incorporate copyright-protected content, images, and product descriptions to mislead consumers into believing that they are purchasing genuine Tory Burch products.

1

On September 14, 2012, the Court granted Tory Burch's *ex parte* motion for entry of (1) a temporary restraining order ("TRO"); (2) a domain name transfer order; (3) an asset restraining order; (4) an expedited discovery order; and (5) service of process by email and electronic publication. Defendants were served with notice of the preliminary injunction proceedings and the TRO. On September 28, 2012, the Court held a hearing on Plaintiffs' motion for a preliminary injunction. No defendant appeared at the preliminary injunction hearing or submitted any written objection to the motion. For the reasons herein, Plaintiffs' motion for entry of a preliminary injunction is granted.

## Discussion

A party seeking a preliminary injunction must show (1) that its case has "some likelihood of success on the merits" and; (2) that it has "no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied." *Ezell v. City of Chi.*, 651 F.3d 684, 694 (7th Cir. 2011). If the moving party meets these threshold requirements, the district court "weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to the nonmoving party or the public is sufficiently weighty that the injunction should be denied." *Id.* The district court's weighing of the facts is not mathematical in nature; rather, it is "more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895-96 (7th Cir. 2001) (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992)). The Court addresses each factor in turn.

I.  Likelihood of Success on the Merits

    A.  Trademark Claims

Under the Lanham Act, a defendant is liable for federal trademark infringement and counterfeiting if the defendant "without the consent of the registrant . . . use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(a). Section 43(a) of the Lanham Act further imposes liability upon a defendant who "on or in connection with any goods or services . . . uses in commerce any . . . false designation of origin, false or misleading description of fact, or false or misleading misrepresentation of fact, which is likely to cause confusion or to cause mistake, or to deceive as to the . . . origin, sponsorship, or approval of his or her goods . . . by another person." 15 U.S.C. § 1125(a)(1). Under the UDPTA, a defendant is liable for, among other things, (1) passing off goods as those of another; (2) causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods; or (3) causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with another. 815 Ill. Comp. Stat. 510/2(a).

Tory Burch's Lanham Act and UDTPA claims involve the same elements. *See Packaging Supplies, Inc. v. Harley-Davidson, Inc.*, No. 08 C 400, 2011 WL 1811446, at *5 (N.D. Ill. May 12, 2011); *Morningware, Inc. v. Hearthware Home Prods., Inc.*, 673 F. Supp. 2d 630, 639 (N.D. Ill. 2009) ("Where a plaintiff's factual allegations under the Illinois Uniform Deceptive Trade Practices Act also form the basis for plaintiff's claims under the Lanham Act, the legal inquiry is the same under both statutes. Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set

forth under the Lanham Act.") (citing *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983)). Moreover, "the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks . . . . Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical – is there a likelihood of confusion?" *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) (internal citations omitted).

A trademark infringement claim under the Lanham Act has two elements. *See* 15 U.S.C. § 1125(a). First, the plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, the plaintiff must show that "the challenged mark is likely to cause confusion among consumers." *Id.* A court will not reach the second element "until persuaded that the mark is sufficiently distinctive to warrant prima facie protection as a trademark." *Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 392 (7th Cir. 1992).

When considering whether a particular mark is protected under the Lanham Act, the law recognizes five categories of trademarks, in ascending order of distinctiveness: generic, descriptive, suggestive, arbitrary, and fanciful. *See Two Pesos*, 505 U.S. at 768; *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001). A plaintiff with a trademark registered in accordance with the Lanham Act is entitled to one of two presumptions: (1) that his registered trademark is not merely descriptive or generic; or (2) that if descriptive, the mark is accorded secondary meaning. *See Packman*, 267 F.3d at 638. Secondary meaning exists "only if most consumers have come to think of the mark not as descriptive at all but as the name of the product." *Id.* at 639. A defendant may overcome this presumption with evidence that the mark is merely generic or descriptive, or that it lacks secondary meaning. *Id.*

4

In this case, Tory Burch is entitled to the presumption that its marks are protected under the Lanham Act because it holds valid and subsisting registrations for trademarks in the United States. (Walden Decl. ¶ 4.) Tory Burch has not licensed or authorized Defendants to use any of its trademarks. (*Id.* ¶ 17.) Defendants have put forth no evidence that the marks registered by Tory Burch are merely generic or descriptive. Thus, Tory Burch satisfies the first element of its Lanham Act claim.

In determining whether a plaintiff satisfies the second element of a Lanham Act claim, that the challenged mark is likely to cause confusion among consumers, the Seventh Circuit has identified seven relevant factors: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and (7) the intent of the defendant to "palm off" his product as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

Here, Tory Burch has submitted extensive documentation showing that Defendants are selling counterfeit versions of Tory Burch products that are virtually identical in appearance to the products sold by Tory Burch itself. (Walden Decl. ¶ 13-17.) Both Tory Burch and Defendants advertise and sell their products over the Internet, targeting consumers looking for Tory Burch merchandise. (*Id.* ¶¶ 8-9, 13-17.) Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing authentic Tory Burch merchandise from counterfeit products. Indeed, it appears that Defendants are intentionally trying to induce consumers looking for genuine Tory Burch products to purchase fake products

5

instead.  In that regard, Defendants use the Tory Burch mark in many of their Accused Domain Names, such as toryburchonlines.com and toryburchflats2012.com, and they advertise products that look almost exactly like authentic Tory Burch products and bear the Tory Burch logo. (Compl., Schedule A.)  Tory Burch does not have evidence of actual consumer confusion, but that is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as genuine Tory Burch merchandise.  *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001).

Taking the evidence as a whole, the Court believes that Tory Burch is likely to establish a prima facie case of trademark infringement and false designation of origin under the Lanham Act and the UDPTA sufficient to support the entry of a preliminary injunction.

**B. Cyberpiracy**

Tory Burch also sues Defendants for cyberpiracy in violation of the ACPA.  The ACPA was enacted to combat "cybersquatting," which is "the bad faith registration of domain names with intent to profit from the goodwill associated with the trademarks of another." *Vulcan Golf, LLC v. Google Inc.*, 726 F. Supp. 2d 911, 915 (N.D. Ill. 2010) (quoting *Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp. 2d 1092, 1099 (C.D. Cal. 2009)).  Cybersquatters "register well-known marks to prey on customer confusion by misusing the domain name to divert customers from the mark owner's site to the cybersquatter's own site." *Id.*  To state a claim under the ACPA, Tory Burch must show that "(1) it had a distinctive or famous mark at the time the domain name was registered, (2) the defendant[s] registered, trafficked in, or used a domain name that is identical or confusingly similar to plaintiff's mark, and (3) the defendant[s] had a

6

bad faith intent to profit from that mark."[1] *MasterCard Int'l Inc. v. Trehan*, 629 F. Supp. 2d 824, 830 (N.D. Ill. 2009) (quoting *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 914 (N.D. Ill. 2007)).

Here, Tory Burch's trademarks are well-known among fashion consumers worldwide, as evidenced by the extensive media coverage of the brand, including by popular magazines like *Vogue*, *InStyle*, *Marie Claire*, and *Elle*, and television shows like CBS Sunday Morning and the Oprah Winfrey Show. (Walden Decl. ¶¶ 10-12.) Additionally, Defendants register, traffic in and use domain names that are identical or confusingly similar to Tory Burch's well-known mark. As described above, many of Defendants' Accused Domain Names directly incorporate the words "Tory Burch," and Defendants use copyrighted photographs of Tory Burch products and logos in order to sell counterfeit versions of them. These facts manifest a bad-faith intent to profit from the Tory Burch mark, and the Court finds that Tory Burch is likely to succeed on the merits of its ACPA claim.

## II. Irreparable Harm/Inadequate Remedy at Law

Having determined Tory Burch is likely to succeed on the merits of its claims, the Court next considers whether the company will suffer irreparable harm without a preliminary injunction, and whether the company has an adequate remedy at law. There is a "well-established presumption that injuries arising from Lanham Act violations are irreparable, even absent a showing of business loss." *Abbott Labs.*, 971 F.2d at 16; s*ee also AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 805 (7th Cir. 2002) (confirming "the law's presumption

---

[1] The ACPA identifies nine factors to consider in assessing bad-faith intent, including: (1) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark; (2) the person's provision of material and misleading false contact information when applying for the registration of the domain name; (3) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others; and (4) the extent to which the mark incorporated in the person's domain name is not distinctive or famous. 15 U.S.C. § 1125(d)(1)(B)(i). A court is not limited to considering only the enumerated factors, and "the most important grounds for finding bad faith 'are the unique circumstances of th[e] case.'" *Virtual Works, Inc. v. Volkswagen of America, Inc.*, 238 F.3d 264, 268 (4th Cir. 2001) (quoting *Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 499 (2d Cir. 2000)).

that trademark dilution or infringement threatens irreparable injury for which there is no adequate remedy at law."). "This willingness to find irreparable harm in trademark cases stems from an understanding that the 'most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods. Even if the infringer's products are of high quality, the plaintiff can properly insist that its reputation should not be imperiled by the acts of another.'" *7-Eleven, Inc. v. Spear*, No. 10 C 6697, 2011 WL 830069, at *6 (N.D. Ill. Mar. 3, 2011) (quoting *Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988)).

Tory Burch has submitted evidence that it has spent substantial sums of money to market the Tory Burch brand in the United States and abroad. (Walden Decl. ¶¶ 5-6.) The Tory Burch brand has earned numerous awards and accolades, including the "Accessory Designer of the Year" award at the 2009 Council of Fashion Designers of America Awards. (*Id.* ¶ 7.) As noted, popular magazines and television shows have covered the success of the Tory Burch brand, and Tory Burch regularly promotes its products with extensive, worldwide advertising campaigns. (*Id.* ¶ 5-12.) The Court finds that Defendants' unauthorized use of the Tory Burch trademarks threaten to irreparably harm the reputation and goodwill Tory Burch has developed with respect to its merchandise. This risks diluting the mark and undermining the years Tory Burch has spent "nurturing its business." *Ty, Inc.*, 237 F.3d at 903. Thus, the Court finds that Tory Burch will suffer irreparable harm without a preliminary injunction, and that the company does not have an adequate remedy at law.

### III. Balancing the Harms/Public Interest

Because Tory Burch has met the threshold requirements necessary for the Court to grant its request for a preliminary injunction, the Court now weighs the factors against one another and assesses whether the balance of harms favors Tory Burch or whether the harm to the Defendants

8

or the public is sufficiently weighty that the injunction should be denied. In balancing the harms between Tory Burch and Defendants, the Court employs a "sliding scale approach: [t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor." *Girl Scouts of Manitou Council v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008) (quoting *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984)). Here, Tory Burch has a strong likelihood of prevailing on the merits, leaving Defendants with a proportionately small chance of showing that they have any right to sell or market counterfeit Tory Burch merchandise. As a result, Defendants have little basis for arguing that they will suffer any harm by virtue of the preliminary injunction. Indeed, as one court has noted, "one who adopts the marks of another for similar goods acts at his own peril, since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotations omitted).

The public interest also weighs in favor of entering a preliminary injunction. *See Girl Scouts of Manitou Council*, 549 F.3d at 1086 (the balancing process should encompass "any effects that granting or denying the preliminary injunction would have on nonparties."). In trademark infringement cases such as this, "the public interest is served by [an] injunction because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000). The public has an interest in not being confused or defrauded into buying counterfeit Tory Burch products.

In sum, Tory Burch is likely to succeed on the merits of its claims, and the balance of the harms weighs in its favor. On these facts, the Court holds that Tory Burch has satisfied its burden of establishing the prerequisites for entry of a preliminary injunction.

**IV. Specific Equitable Relief**

Tory Burch asks that the TRO entered by this Court on September 14, 2012, be converted into a preliminary injunction so that Defendants remain enjoined from the manufacture, importation, distribution, offer for sale, and sale of products bearing counterfeit Tory Burch trademarks during the pendency of this litigation. Pursuant to the TRO, Tory Burch caused dozens of PayPal accounts associated with Defendants' websites to be frozen. (Gaudio Decl. ¶ 2.) Tory Burch also served the TRO on the relevant domain-name registries, requesting transfer of the Defendants' names. (*Id.*) Tory Burch argues that a preliminary injunction is necessary so that the domain names remain in Tory Burch's control and the Defendants' PayPal and other accounts remain frozen until completion of these legal proceedings. Otherwise, Defendants would be able to continue to sell counterfeit Tory Burch products and could move monies from such sales to offshore accounts.

In sum, the Court holds that, under all the circumstances presented, the preliminary injunction that Tory Burch seeks is necessary and appropriate.

**V. Conclusion**

For these reasons, the Court grants Plaintiffs' motion for entry of a preliminary injunction.

**SO ORDERED.**                          **ENTER:** October 2, 2012

_____
The Honorable John Z. Lee
U.S. District Judge